UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-134 |
| v. | * | SECTION: M |
| ANTHONY BROWN | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant ANTHONY BROWN ("BROWN") stipulate and agree that the below facts are true and that they would have been proven beyond a reasonable doubt had this matter proceeded to trial. The United States and BROWN further stipulate and agree that these facts provide a sufficient basis for a plea of guilty to the charge that BROWN, not being lawfully entitled a certificate, license, and document issued to officers and seamen by any officer and employee of the United States authorized by law to issue the same, did receive and possess said certificate, license, and document, with intent unlawfully to use said certificate, license, and document, in violation of Title 18, United States Code, Section 2197. The below facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or BROWN's complete knowledge of the offense.

A.  **At all times relevant herein:**

Federal statutes and regulations ("federal law") authorized the United States Coast Guard ("USCG") to issue merchant mariner credentials ("MMCs") and related endorsements. Under federal law, all mariners employed aboard United States merchant vessels greater than 100 gross registered tonnage, with a few limited exceptions, were required to have valid MMCs. Furthermore, to serve in various positions, federal law required mariners to have particular

AUSA _CM_
Defendant _AB_
Defense Counsel _CE_

endorsements added to their MMCs. Consequently, an MMC and each endorsement to an MMC each constituted a "certificate, license, or document," as described in Title 18, United States Code, Section 2197.

Endorsements determined what position mariners could work, on what kind of vessels, and in what waters. The presence of an endorsement on an MMC indicated that the mariner was qualified to serve in the specified capacity and that he had met all legal requirements for that endorsement. Federal law prohibited a mariner from serving in a position for which he lacked the required endorsement. Similarly, federal law prohibited a business from employing a mariner in a position for which he lacked the required endorsement.

In order to obtain an MMC, a mariner was required to meet various requirements and to take an oath, promising to faithfully and honestly perform all the duties required by the laws of the United States. For many endorsements, federal law required mariners to pass USCG-administered examinations. These examinations tested mariners' knowledge and training to safely operate under the authority of the endorsements. The examinations, which typically consisted of numerous separately-graded modules, were administered at USCG regional exam centers. One such regional exam center, known as REC New Orleans, was located in the Eastern District of Louisiana. USCG employees at the regional exam centers entered the scores into a computer system used to manage the issuance of credentials to mariners and to process applications for MMCs and endorsements.

**B.     BROWN received, possessed, and intended to use an endorsement to which he was not lawfully entitled**

BROWN was a mariner who sought to add what is known as a Master Unlimited Tonnage Upon Oceans ("Master Unlimited Oceans") endorsement to his MMC. As BROWN knew, in order

AUSA _CM_
Defendant _AB_
Defense Counsel _GBE_

to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center.

Eldridge Johnson ("Johnson") was a former USCG employee at REC New Orleans. Johnson informed **BROWN** that Johnson could, in exchange for money, arrange for mariners to receive false passing examination scores at REC New Orleans.

Prior to April 12, 2018, **BROWN** formed an agreement with Johnson to pay Johnson a sum of money in exchange for Johnson arranging for a USCG employee at REC New Orleans to falsely report that **BROWN** had passed the examination required for a Master Unlimited Oceans endorsement. Pursuant to this agreement, **BROWN** paid Johnson a sum of money.

As a result of **BROWN**'s conduct, on or about April 12, 2018, a USCG employee at REC New Orleans falsely reported in a USCG computer system that **BROWN** had passed the examination associated with his application for a Master Unlimited Oceans endorsement. In truth, as **BROWN** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **BROWN** so intentionally causing the USCG examiner to make this false entry, the USCG issued **BROWN** a Master Unlimited Oceans endorsement.

The aforementioned endorsement, to which **BROWN** was not lawfully entitled, authorized **BROWN** to, among other things, serve as the master of vessels of any tonnage in any waters. The master, also known as the captain, is the officer having command of a vessel. The master is ultimately held responsible for the safety of the crew, vessel, cargo and all aspects of the vessel's operation.

From on or about April 12, 2018, through on or about December 10, 2019, in the Eastern District of Louisiana and elsewhere, **BROWN** received and possessed the above-referenced

3



AUSA _CM_
Defendant _AB_
Defense Counsel _CW_

endorsement and an MMC containing said endorsement, knowing that he was not lawfully entitled to them and with the intent to unlawfully use them.

_____   1/5/2021
CHANDRA MENON                     Date
Assistant United States Attorney

_____   1/11/2021
CHRISTOPHER B. EDWARDS            Date
Counsel for Defendant

_____   1/8/2021
ANTHONY BROWN                     Date
Defendant

4